UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-25343-Civ-COOKE/TORRES

MIAMI WAREHOUSE LOGISTICS, INC.,

    Plaintiff,

vs.

SEABOARD MARINE LTD.,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This is a breach of contract and negligence action arising from a marine shipping agreement gone sour. Plaintiff Miami Warehouse Logistics, Inc. ("MWL"), a warehousing, distribution, and logistics company, seeks compensatory damages from Defendant Seaboard Marine Ltd. ("Seaboard"), an ocean transport company, for a spoiled shipment of goods. I have jurisdiction under 28 U.S.C. §§ 1333 and 1441.

Pending is Seaboard's Motion for Summary Judgment. (ECF No. 14). I have reviewed the Motion, the parties' supporting and opposing briefs, the record, and the relevant legal authorities. For the reasons that follow, I grant the Motion.

## BACKGROUND

In October 2015, MWL was a freight forwarder for PepsiCo, Inc. ("PepsiCo"), an international beverage company. (ECF No. 15-1 at 6:3-6). During that time, MWL hired Seaboard to ship thirty-five drums of PepsiCo's cranberry concentrate from the United States to the Dominican Republic. (ECF Nos. 1-2 ¶ 6). The initial bill of lading mistakenly specified a shipping temperature of sixty-four degrees. (*Id.* ¶ 7). MWL later changed the bill of lading to specify the correct shipping temperature, zero degrees. (*Id.* Ex. A). Seaboard acknowledged the change and, on October 19, 2015, loaded the concentrate into a shipping container bound for the Dominican Republic. (*Id.* ¶ 7-8). It did not, however, cool the container to the correct shipping temperature at any point during the voyage. (*Id.* ¶ 9).

The concentrate arrived at the Dominican Republic on October 28, 2015. (*Id.* ¶ 10). When MWL and PepsiCo learned that Seaboard had not shipped the concentrate at the correct

temperature, they contacted Ocean Spray, the manufacturer, to determine if the concentrate was still suitable for consumption. (*Id.*). Ocean Spray responded that it was not. (*Id.* ¶ 11). MWL used trade credits to reimburse PepsiCo for the spoiled concentrate, and filed a claim with Seaboard seeking its own reimbursement. (*Id.* ¶ 12). When Seaboard denied that claim, MWL brought this action in state court, alleging state-law claims for breach of contract and negligence, and seeking unspecified damages. (*Id.* ¶¶ 13, 16-24). Seaboard timely removed. (ECF No. 1).

**STANDARD OF REVIEW**

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x

898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## DISCUSSION

Seaboard offers several arguments in support of its Motion: (1) the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, *et seq.* ("COGSA") preempts MWL's claims; (2) MWL's claims are time-barred under COGSA; (3) Seaboard's liability is limited to $17,500.00 under COGSA; (4) the Economic Loss Rule bars MWL's negligence claim; (4) MWL cannot collect damages for its voluntary reimbursement of PepsiCo; and (5) the Complaint does not state a viable claim for attorney's fees. I focus on the first two arguments, as they are dispositive.

COGSA applies to all foreign trade contracts for the carriage of goods by sea to or from United States ports. 46 U.S.C. § 30712. The Act governs, *inter alia*, a carrier's duties with respect to cargo from loading until discharge. *See Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 785 & n.6 (11th Cir. 1999). The parties may, however, agree to apply COGSA to other periods of transit by so indicating in the bill of lading. *See PT Indonesia Epson Indus. V. Orient Overseas Container, Inc.*, 219 F. Supp. 2d 1265, 69 (S.D. Fla. 2002).

Regardless of the period of transit, a carrier is liable under COGSA for "loss or damages arising from negligence or fault in loading, stowage, custody, care, or proper delivery" of cargo. 46 U.S.C. § 30704. Claims made pursuant to a bill of lading completely preempt state-law causes of action and confer jurisdiction to federal district courts. *See Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co., Ltd.*, 215 F.3d 1217, 1220 (11th Cir. 2000) ("COGSA, when it applies, supersedes other laws."). Plaintiffs are entitled to a single remedy and all other tort claims are excluded. (*Id.*).

The contract here, which provides for the carriage of goods by sea from the United States to the Dominican Republic, falls squarely within COSGA's purview. *See* 46 U.S.C. § 30712. Even if it did not, the bill of lading expressly states that it is "subject to [COGSA], and nothing herein contained, unless otherwise stated, shall be deemed a surrender by the Carrier of any of its rights, immunities, exemptions, limitations or exonerations or an increase of any of its responsibilities or liabilities under COGSA." (ECF No. 14-2 ¶ 4); *see, e.g., Sail Am. Found. v. M/V T.S. Prosperity*, 778 F. Supp. 1282, 1286 (S.D.N.Y. 1991)). ("Where COGSA does not apply by operation of law, the parties to a bill of lading may incorporate the statute as a

3

contractual term."). In short, COGSA governs this dispute and completely preempts MWL's state-law breach of contract and negligence claims. *See Polo Ralph Lauren*, 215 F.3d at 1220. At Seaboard's suggestion, however, I shall treat the breach of contract claim as one arising under COGSA and decide the Motion accordingly.

Suits under COGSA must commence within one year of delivery. *Mesocap Ind. Ltd. v. Torm Lines*, 194 F.3d 1342-43 (11th Cir. 1999) (noting COGSA's one-year limitations period); *C.H. Robinson Worldwide, Inc. v. Compañia Libre de Navegacion (Uruguay) S.A.*, 718 F. Supp. 2d 1361, 1363 (S.D. Fla. 2010) (same). Moreover, the bill of lading here provides, *inter alia*, that "the Carrier shall be discharged from all liability of whatsoever nature unless suit is brought within 1 year after delivery of the Goods," and that "[s]uit shall not be deemed 'brought' unless jurisdiction is obtained over the Carrier by service of process or by an agreement to appear." (ECF No. 14-2 ¶ 21). Seaboard delivered the concentrate to the Dominican Republic on October 28, 2015. (ECF No. 1-1 ¶ 10). MWL served Seaboard with the Summons and Complaint in this action on December 13, 2016 (ECF 14-6 at 11), after expiry of the one-year COGSA limitations period.

MWL argues that I should excuse its delay in bringing suit because Seaboard deviated from the bill of lading by not shipping the concentrate at the correct temperature. *See C.A. La Seguridad v. Delta Steamship Lines*, 721 F.2d 322, 324 (11th Cir. 1983) (deviation from contract of carriage strips carrier of its defenses under COGSA). Under the doctrine of deviation, when a carrier deviates markedly from the contract of carriage, COGSA does not apply because the bill of lading, which acts as the contract of carriage, is nullified. *See Unimac Co., Inc. v. C.F. Ocean Serv., Inc.*, 43 F.3d 1434, 1437 (11th Cir. 1995).

The doctrine of deviation evolved from the pre-COGSA law of marine insurance. *See generally B.M.A. Indus., Ltd. v. Nigerian Star Line, Ltd.*, 800 F.2d 27 (2d Cir. 1986) (discussing evolution of doctrine of deviation). When the carrier inexcusably deviated from its contract of voyage, the shipper's insurance on its cargo was often voided. (*Id.*). In order to protect shippers in those circumstances, courts developed the rule that an inexcusable geographic deviation prevented the carrier from invoking a limitation of liability clause in the contract of carriage. (*Id.*).

COGSA, enacted in 1936, did not define deviation, but since its enactment, courts have applied the doctrine sparingly, generally only for "geographical departures and unauthorized on-deck stowage." *B.M.A. Indus.*, 786 F.2d at 91 (2d Cir. 1986); *see Rockwell Int'l Corp. v. M/V*

*Incotrans Spirit*, 998 F.2d 316, 319 (5th Cir. 1993) ("[T]he notion of non-geographic deviation may be . . . of questionable status under [COGSA]") (citation omitted)); *SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1304 (3d Cir. 1992) ("[D]octrine of quasi-deviation should be not be viewed expansively in the post-COGSA era.").

Although the Eleventh Circuit has yet to decide whether a misdelivery like the one in this case is a deviation, it has held that nondelivery is *not* a deviation. *See C.A. La Seguridad*, 721 F.2d at 325 (carrier's failure to deliver goods did not constitute a deviation); *see also C.A. Articulos Nacionales de Goma Gomaven v. M/V Aragua*, 756 F.2d 1156, 1161 (5th Cir. 1985) (no deviation where cargo was loaded onto ship but inexplicably, never delivered); *Italia Di Navigazione, S.P.A. v. M.V. Hermes I*, 724 F.2d 21, 22-23 (2d Cir. 1983) (refusing to extend doctrine of deviation to nondelivery of goods). No breach of contract could be more material or essential than failing to deliver the goods. There is no justification for treating a botched delivery like the one here more harshly. Consistent with the courts' general reluctance to interpret the doctrine of deviation expansively, I decline to hold that Seaboard's failure to keep the concentrate cooled to zero degrees during transit was a deviation abrogating the terms and conditions of the bill of lading.[1] *See Unimac*, 43 F.3d at 1437 ("[N]ot every breach of contract is a deviation.").

Accordingly, the one-year limitations period for bringing a COGSA claim applies, meaning that this action is untimely.[2] Summary judgment is therefore appropriate.

## CONCLUSION

In light of the above, it hereby **ORDERED and ADJUDGED** that Defendant Seaboard Marine Ltd.'s Motion for Summary Judgment (ECF No. 14) is **GRANTED**. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

---

[1] Even if Seaboard's misdelivery were a deviation, it would not necessarily abrogate the COGSA limitations period. In *Unimac*, the Eleventh Circuit left open the possibility that such a deviation, even if unreasonable, would not affect the limitations period. *Unimac*, 43 F.3d at 1437 n.5 ("[W]e need not decide whether a deviation would strip a carrier of both the $500 limitation on liability and the statute of limitations, or as the Fifth Circuit has held, merely of the liability limitation, and not of the one-year statute of limitations."); *see Bunge Edible Oil Corp. v. M/V Torm Rask & Fort Steele*, 949 F.2d 786, 788 (5th Cir. 1992) ("An unreasonable deviation does not prevent a carrier from invoking the one-year limitations period under COGSA.").

[2] Because my ruling disposes of this case, I decline to rule on Seaboard's various other arguments.

**DONE and ORDERED** in chambers at Miami, Florida, this 16th day of January 2018.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*